**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NELSON B. AMOS,
<u>Plaintiff-Appellant,</u>

v.

BASF CORPORATION, Chemical
Division; BASFIN CORPORATION;
BASF AKTIENGESELLESCHAFT,                          No. 96-2166
<u>Defendants-Appellees,</u>

and

ALDRICH CHEMICAL COMPANY,
INCORPORATED; ALLIED-SIGNAL, INC.,
<u>Defendants.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
James C. Turk, District Judge.
(CA-93-222-D)

Argued: May 8, 1997

Decided: October 1, 1997

Before NIEMEYER and MOTZ, Circuit Judges, and FABER,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gary Wheeler Kendall, MICHIE, HAMLETT, LOWRY,
RASMUSSEN & TWEEL, P.C., Charlottesville, Virginia, for Appel-

lant. David Alan Rudlin, HUNTON & WILLIAMS, Richmond, Virginia, for Appellees. **ON BRIEF:** Kelly L. Faglioni, HUNTON & WILLIAMS, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Nelson Amos, a longtime employee of E. I. DuPont de Nemours & Co. at its nylon manufacturing plant in Martinsville, Virginia, developed a disabling respiratory condition from exposure to Caprolactam, a sometime component of nylon. After receiving workers' compensation benefits from DuPont, Amos filed this diversity action against DuPont's Caprolactam supplier, BASF Corporation and affiliated companies ("BASF"), contending that BASF failed to warn him of Caprolactam's dangers. On BASF's motion, the district court, applying Virginia law, entered summary judgment for BASF.

In manufacturing a certain type of nylon, Caprolactam is added to the molten nylon chemical mix which is then forced through spinnerettes, shower-head like devices, forming filaments of nylon fiber. Amos worked in the spinnerette area of the Martinsville plant, tending the machines and cleaning the spinnerette heads. In the course of his work, he was exposed to vapors and residue from the cooling nylon fibers. While not a carcinogen, Caprolactam reportedly has been shown to produce transient dermal and ocular irritation and upper respiratory tract irritation, as well as allergic reactions in a small number of sensitized persons.

DuPont invented and patented Caprolactam and initially manufactured its own needs for the chemical. After it stopped manufacturing the chemical in the mid-1960s, however, it agreed to purchase most of its needs from BASF. As part of their November 1991 supply

2

agreement, DuPont assured BASF that it "possesses skill and expertise in handling, storage, transportation, treatment, use and disposal of [Caprolactam], and it will inform and train its employees and its customers in the aforementioned skills and expertise."

Before approving the use of Caprolactam at its Martinsville plant in 1978, a DuPont committee conducted a "chemical approval request" designed to identify risks posed by the chemical and instituted a risk management system. The DuPont committee included occupational health, safety, fire, electrical, environmental, and medical section representatives who reviewed research from both BASF and DuPont's own sources. DuPont also employed an occupational health coordinator at its Martinsville plant who developed a manual on chemical health which was kept in the administrative office in each area of the plant and was available to all employees. Included among the materials available to employees were Material Safety Data Sheets describing the nature of Caprolactam and its risks.

In its raw form, Caprolactam is shipped as flakes packed in 55-pound paper bags. Each bag is printed with a warning that contact or exposure to the chemical and its vapors may cause skin and eye irritation. The warning also directs handlers to read the applicable Material Safety Data Sheet. The Material Safety Data Sheet for Caprolactam prepared by BASF states that vapors from heated Caprolactam can cause irritation to the skin and respiratory tract and that workers exposed to Caprolactam vapors have complained of"nervousness, heartburn, a heavy feeling in the stomach, stuffy nose and head, nosebleeds, a bitter taste, and dry, splitting lips and nose." It also warns that "[o]verexposure to Caprolactam may cause[central nervous system] effects, including respiratory stimulation, mild circulatory depression and convulsions."

Amos offered evidence that, following his first exposure to Caprolactam at the Martinsville plant in February 1991, he began suffering burning in his eyes and nose and immediately complained to DuPont supervisors, who assured him of Caprolactam's safety. A month later he was treated at a local hospital for chest tightness, difficulty in breathing, and nosebleeds. After a lapse in the use of Caprolactam between May and September 1991, DuPont returned to manufacturing nylon containing Caprolactam, and Amos' symptoms

3

returned with increased severity. After leaving work on temporary disability leave in December 1992, Amos was given early retirement on the ground that he was totally disabled by hyperactive airway disorder, an asthma-like condition. Amos contends that his condition is the result of his exposure to Caprolactam vapors.

Amos sued BASF and affiliated companies for failing to warn of Caprolactam's dangers, grounding his complaint on negligence and breach of warranty. In granting BASF's motion for summary judgment, the district court concluded (1) that BASF reasonably relied on DuPont as a sophisticated user of Caprolactam to provide adequate warnings to its employees and therefore had no duty to warn Amos of Caprolactam's dangers, and (2) that Amos failed to produce any evidence that defective warnings caused his injury.

We have carefully reviewed the record and considered the written and oral arguments of counsel on appeal, and, for the reasons ably articulated by the district court in its memorandum and orders, we affirm. See Amos v. BASF Corporation, et al., Civil Action No. 93-0222-D (W.D. Va., July 11, 1996 & August 15, 1996).

AFFIRMED

4